SAMUEL S. SIBLEY, APPELLANT, *vs.* MARIA, A WOMAN OF COLOR, APPELLEE.

W. O., of South Carolina, devised the greater part of his real and personal estate to W. H., upon the condition that a certain slave and her four children, as his property and under his protection, shall be allowed all the privileges of free persons in the State of South Carolina, consistently with good order and a proper subordination, and shall be allowed out of the property devised to W. H., two hundred and fifty dollars each, to be paid them at such times and in such quantities as, in his judgment, will be most proper;—otherwise, they are to be taken to the State of Ohio, and the balance of the money, over and above what will be expended in their passage, to be paid to them there; and in case the said W. H. should refuse or neglect to comply with the conditions herein expressed, or should die without an heir, then, in either of these cases, all the interests, rights and emoluments left by the will to W. H., to go to J. H.

Held, first—That W. H. takes the estate devised to him, subject to certain conditions subsequent, which, unless he performed, a limitation over to J. H. is created, and is termed a conditional limitation.

Second.—The testator, by such a will, manifests unequivocally his intention that the slaves shall be free, and this is shown by the declaration that they shall enjoy all the privileges of free persons, &c., if they remain in the State—as well as by the wish expressed, that if they do not remain, they be taken to the State of Ohio.

Third.—A solemn trust is clearly created by the terms of the will, involving the freedom of slaves, and the greater part of the testator's estate is devised, subject to and conditioned upon this trust.

Fourth.—That portion of the will which provides that the slaves shall have the privileges of free persons is void, because it is a condition inconsistent with the gift, and incompatible with the relation of master and slave.

Fifth.—Such privileges would also be inconsistent with the laws and policy of South Carolina, where the will was made. This portion of the will could not, therefore, have been carried out.

Sixth.—The intention of the testator being to give the slaves their freedom, could have been carried out by taking them beyond the limits of the State—there being at the time of the probate of the will no law to prevent it in South Carolina.

Seventh.—The taking of the slaves to Ohio, was regarded by the testator as a *dernier* means of giving them freedom. No rational intendment other than that of freedom can be made or inferred from the direction to remove them to Ohio, and to pay them money when there.

Eighth.—In the absence of any proof to the contrary, the presumption is, that the devisee executed and performed the trust reposed in him, the general rule being, that when a person is required to do a certain act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended that he has duly performed it, unless the contrary be shown.

Ninth.—The will not having pointed out within what time the condition was to be performed, the law presumes that it must be done within a reasonable time.

Tenth.—If not performed within a reasonable time, then the ulterior legatee might claim the estate for condition broken—subject, however, in his hands, to the same condition.

The establishment of the right of the mother to freedom by the Courts of Florida, does not infringe upon the policy of this State, owing to our statute in relation to the manumission of slaves, the presumption being that she was free when she came here.

This was an action of trespass, instituted by the appellee in the Circuit Court of Leon County, at the Spring Term, 1847, for the purpose of establishing her right to freedom, under the will of William Oliphant, made in South Carolina in 1827, and admitted to probate in that State in 1828.

The defendant pleaded not guilty, and that plaintiff was a slave.

The case was tried at the Spring Term, 1848, before the Hon. Thomas Baltzell, Judge, presiding in said Court.

After the proofs were submitted to the jury, and after argument of counsel, the Court charged the jury as follows, viz :

That it was the duty of the executor under the will, to give freedom to the slave, according to its provisions, and that, in the absence of all testimony on the part of both plaintiff and defendant, as to the mode in which she has been held, or is now held, and after the lapse of time, the jury may infer that that duty was performed.

That the bequest of the will imposes a duty and trust, and the presumption of law is, that it has been performed.

That a fraudulent disposition, in opposition to and in defiance of the will, would not confer a right on defendant.

That the law of South Carolina having received a judicial construction by the Courts of that State, their decision is conclusive in reference thereto, and according to that construction, the bequest gave clear and indisputable right of freedom to plaintiff.

Defendant by his counsel prayed the Court to instruct the jury, (among other charges asked,) that if they believed that emancipa-

tion was prohibited by the *laws* of South Carolina, (except by the Legislature,) at the time the will under which the plaintiff claims freedom was made, then plaintiff is not entitled to her freedom, and they should find for defendant." But the Court refused to give the instruction asked, as well as others prayed by defendant. To which refusal, and to the instructions given, the defendant by his counsel excepted.

*Papy*, for appellant :

The right claimed by the appellee in this case is based upon the will of William Oliphant, executed in South Carolina in the year 1828.

It will be observed, by reference to the copy of this will to be found in the record, that there is no provision which expressly directs the appellee to be emancipated. She can, then, only claim by construction.

She is given to the legatee, W. H. Hollingsworth, as his property, but directs that she be permitted to enjoy the privileges of a free person. This direction is manifestly void, because it is a condition inconsistent with the gift. No person can be a slave, the property of another, and yet enjoy the privileges of a free person. Such a privilege is incompatible with the relation of master and slave, and with the rights, duties and reciprocal obligations resulting therefrom. If this provision, however, be considered as an indirect gift of freedom, it is void, because the laws of South Carolina of force when this will was executed, and when admitted to probate, prohibited emancipation of slaves, except by act of the Legislature. Courts of justice will not give effect to the provisions of a will, or deed, having for their object the evasion of the settled law and policy of a State.

It may, however, be insisted that the alternative part of the clause, " or otherwise to take them to the State of Ohio, and the balance of the money bequeathed (to the slaves) to be paid them there," is sufficiently explicit to obviate the difficulty presented by the statutes of South Carolina. But this is left at the option of the legatee. He could adopt either the first or the latter part of the clause.

But the will does not direct what shall be done with them, after they reach Ohio. In order, therefore, for this Court to establish the claim set up by the appellee, they must (there being no evidence of

21

the fact) take judicial notice that the laws of the State of Ohio pro-
hibited domestic slavery when this will was executed, and by con-
struction, determine that the design of Oliphant was to have the ap-
pellee emancipated when she arrived there.

But conceding that the effect of the will is an express direction to
take the appellee to Ohio, and there *set her free,* how is it to be en-
forced?—at whose instance ?   It is very clear that as long as the
appellee remained in South Carolina, where the provisions of no will
emancipating a slave could operate, or in any of the slave-holding
States, (so far as her rights under this will are concerned,) she could
not be free, because, if she obtained her freedom at all, it could only
have been by operation of law prohibiting slavery in the State to
which she might have been taken, as there is no express direction to
manumit her.   If this be true, and it seems to be a proposition too
plain to require illustration, she must still be a slave, and must con-
tinue to be, until she is taken to a free State, with a view to free her,
or until she is emancipated in the manner prescribed by law.   And
if she is now a slave, she has has no *status* in Court.   In contem-
plation of law, slaves are mere chattels, things.   They have no civil
rights—they can hold no property, *nor can they bring a suit*—they
can acquire no right which does not, in the instant it is acquired,
pass to the master.   The Courts cannot interfere to compel Wm. H.
Hollingsworth to perform the trust in this case, at the instance of this
party, because to do so, they would be recognizing a person unknown
to the law.

In the case of Frazier *v.* Frazier, 2 Hill's Ch. Reps., 316, which,
it seems, governed, in a great degree, the decision of this case in the
Court below, the principle just contended for is admitted, but the
Court in that case decide in effect that as the bill was filed by the
heirs to partition the slaves, the Court would, if on looking into the will
they find that the executors could execute it, by sending the slaves
out of the State, order them to discharge the trust.   In that case, too,
there was an express direction to the executors to take the slaves to
San Domingo and emancipate them, and the executors had seized the
slaves for the purpose of carrying out the will.   But it will be per-
ceived that even there the slaves were not emancipated, but were
directed to be taken out of the State, as expressed in the will.

It will be seen, however, by a further examination of the will, that,
in the event of the failure of the first legatee to perform the condi-

tions annexed to the bequest to him, the testator bequeathes the estate given to him to John H. Hollingsworth, without any condition or limitation expressed. The effect of this whole clause taken together, conceding that the conditions attached to the bequest to Wm. H. Hollingsworth were valid and binding to vest in John H. Hollingsworth the title to the property bequeathed, as if given to him originally, upon the neglect or refusal of Wm. H. Hollingsworth to comply with the conditions adverted to.

John H. Hollingsworth, then, had the right in such event to claim the property, and in that case no provision is made in reference to the appellee. It is conceived that in such case the appellee would either fall into the residuum of the estate of the testator, or would be included in the property going over to John H. Hollingsworth. Whether, therefore, the conditions annexed to the bequest to Wm. H. Hollingsworth are void, or whether, upon the neglect or refusal to comply therewith, if valid, the property vested in John H. Hollingsworth, in neither event is the appellee entitled to recover.

If this case is to be decided as if it were now pending in the Courts of South Carolina, even if there was a direct and express injunction to carry the appellee out of the State into a free State, and there emancipate her, it could not be done, because by an act of the Legislature of that State, passed in 1841, it is expressly forbidden for executors to carry out such direction in a will, and the Courts there have decided that the law adverted to operates as well upon wills executed and not carried into effect before the passage of the act as after. 1 Richardson's Eq. Rep., 65. 2 Richardson's Eq. Rep., 43.

But if it be insisted that this case must be decided by the laws of this State as they now exist, it will be seen, by reference to Thompson's Digest, page 533, that certain pre-requisites are necessary, in order to manumit a slave here. No slave can acquire her freedom in any other wise. In this case, there is no one to perform the requirements of the law. Let it be recollected that, under the will, the appellee could not be emancipated, except by operation of law in the State to which she might be taken, and if not until then, she must still be a slave. How, then, can the Court listen to her claim, against the consent of the party holding her as a slave, and grant her freedom before the right of emancipation is vested.

It would only be necessary for a person desiring to emancipate a

slave in this State to go into an adjoining State, whose laws permit it, and there, by deed or otherwise, manumit her, deliver her into the possession of another, have her brought here and sue for freedom, in order to evade the law which requires all persons desiring to manumit a slave to give bond to send such slave out of the State within thirty days.

These laws in relation to emancipation are founded in high public policy, and are enacted to preserve the institutions peculiar to the Southern States. Courts of justice are careful not to countenance any attempt to evade them, and will not give their sanction to any efforts to render them nugatory by schemes, however artfully contrived, to set them at defiance.

It is better even that cases of transient injustice should be endured, than that the general law and policy of the country should be disturbed.

The Court below charged the jury, that there being no evidence of the manner in which the appellee was held, the presumption arises, that Wm. H. Hollingsworth discharged the trust in the will to set her free, and that, therefore, she was entitled to her freedom. But with all deference to that Court, how could such presumption arise, in the face of the fact that she was held as a slave, admitted by the very suit itself, and that the laws of this State and of South Carolina forbid emancipation, except under certain forms ?

The only way in which the appellee could have been freed under this will, was to have been taken to Ohio with that view—and if she had been so taken, she would not now be in Florida, or if she were here, she could only be so as a slave. Thompson's Digest, 533. The presumption, then, of her present freedom, cannot arise in any view of the case ; nor can the principle that the presumption of law is always in favor of liberty be invoked here. That principle had its origin in a country where slavery was and is unknown. The institution of slavery in the Southern States is unlike the systems of feudalism and villainage in England. It is more like the slavery of the Greeks and Romans, where the slaves, as our slaves, had no legal rights or privileges whatever, with the exception that here they are protected by our laws from the cruelty to which the Roman slaves were exposed.

In the States of this Union where slavery exists, the black complexion affords a presumption of slavery, and a black person will so

be regarded until the contrary is shown.   2 Halsted, 253.   2 Bibb, 238.   The presumption of law, *in favorem libertatis*, instead of having any application in this case, is entirely reversed.   The presumption being against the appellee, arising from her complexion, it devolves upon her to *prove* her right to freedom, by proper and legal testimony.   This, I apprehend, cannot be done, unless she can show that she was taken to the State of Ohio, or any other free State, with the view of emancipating her, and that her right to freedom vested accordingly.

If, however, under the most favorable view, the appellee is entitled to have the trust in the will carried out, the utmost she can claim is to have her sent to Ohio ; and in that case, it being a trust, a court of law cannot afford relief, but she must resort to a Court of Chancery.

*Woodward,* for appellee :

This is a suit for freedom, under the will of William Oliphant, of South Carolina, made October 13, 1827, admitted to probate, January 20, 1828.

The clause containing the bequest of freedom is in the alternative, to wit :  " The privileges of free persons of color, consistently with good order and subordination—or otherwise, to take them to the State of Ohio."

The object of the will is the freedom of the slave.

The instructions of the Court are sustained by law.

1. As to the *duty* of the *executor*.

2. The *presumption* of its *performance*.

3. The *fraud* of *dereliction*.

4. The *judicial decisions* of a State being the *best exposition of its laws*.

The counsel cited and commented on the authorities adduced by him in reference to the instructions given by the Court below, and then proceeded to establish the following propositions :

I.—A will takes effect from the *death of the testator*—rights under it accrue from that time.   How, then, can a bequest revert to the testator, " *eo instanti*"—it is passing away from him forever.

II.—It is only *our own* slaves that are bound to conform to our emancipation laws.   Those of other States to theirs.

III.—The right to freedom being vested by the will, at the death of the testator, a law declaring emancipation illegal can have only a prospective operation.

IV.—Emancipation not being inhibited by the laws of South Carolina—*ergo*, a provision thereof by will is NOT VOID.

V.—An *act* of the Legislature was not essential to emancipation, if the slave were to be removed beyond the borders of the State, and only in that event, claiming to be free:

VI.—The executor was bound to adopt the alternative which should *effectuate* the testator's will—his will was *the freedom of this slave*—removal to Ohio the only certain mode of accomplishing the purpose, if the other were *impracticable*, or having been attempted, had *failed*. This being the duty of the executor, it is equally incumbent upon the legatee, because expressly enjoined.

VII.—The omission, neglect, or refusal to remove the slave to Ohio, constitutes the *fraud*, against which the Courts will relieve— it is the very *gravamen* of the wrong, for which this suit is seeking redress.

The appellee had a right to resort to a Court of *Equity* in South Carolina, for the enforcement of her claim. She is equally entitled to assert it in this form of action here. That Court would have compelled performance by the executor, or legatee—this Court can adjudge her rights in the only mode in which they can be practically exhibited in the tribunals of this State.

The assertion of a purely personal right can be restricted only by want of jurisdiction over the person against whom, or the subject matter in reference to which, it is urged. In this case, jurisdiction over the subject-matter and the person is not only unquestionable and conceded, but it is such as our courts are bound to entertain.

To sustain these propositions, the counsel cited the following authorities, viz : 1 Leigh, 465. 4 J. J. Mar., 370. 2 J. J. Mar., 475. 3 Leigh, 8, 9, 11. 2 Leigh, 189, 192, 193. 2 Hill's Ch., 303, 313. 1 Peters, 680. 2 Peters, 220, 37, 38. 2 Phillips, 296, 297, 298, 301, 302, 307, 368. 6 Con. Rep., 445. 19 Johns., 345. 2 Cowan, 285.

*Duval*, also for appellee, supported the views taken by Mr. Woodward, and urged her right to freedom.

Opinion by Justice HAWKINS :

Sibley *vs.* Maria, a woman of color.—Opinion of Court.

This was an action of trespass brought by the appellee, Maria, a woman of color, against Sibley, who claims her as a slave.

To sustain the action, the will of William Oliphant of Edgefield District, South Carolina, was introduced, the plaintiff claiming her freedom by virtue of a clause contained in it in the following words, to wit :

" Item 16th and lastly, I give and bequeath to my nephew, William C. Hollingsworth, all the remaining part of my estate, both real and personal, including my interest in a house and lot in the city of Augusta, in the State of Georgia, after my lawful debts are paid out of it. I give and bequeath to him a life time estate in my tract of land known by the name of my Turkey Creek place, and at his death that it shall descend to his legal heirs in fee simple ; all the rest of my real estate I give and bequeath to him and his heirs forever, together with all my personal estate not otherwise disposed of, and *under the following conditions, to wit :* that my negro woman Maria, and her four children as his property and under his protection shall be allowed all the privileges of free persons, consistently with good order and a proper subordination, and shall be allowed out of the property demised to the said William H. Hollingsworth, two hundred and fifty dollars each, to be paid to them at such times and in such quantities as in his judgment will be most proper, otherwise to take them to the State of Ohio, and the balance of the money over and above what will be expended in their passage to be paid to them there ; and in case the said William H. Hollingsworth should refuse or neglect to comply with the conditions herein expressed or should die without a legal heir, in either of these cases it is my will and desire that *all the interests, rights and emoluments which the said William H. Hollingsworth has, by virtue of this will,* shall go to John H. Hollingsworth, and shall be his to all intents and purposes as though they had been originally demised to him, &c."

Giving the will what we deem a proper construction, it appears clearly to have been the intention of Oliphant, the testator, that Wm. H. Hollingsworth should take the Turkey Creek place free from all conditions, but that he was to take all the rest of his real and personal estate, not otherwise disposed of, subject to the conditions above set forth. In other words, William H. Hollingsworth, the devisee, was to take the estate devised to him *subject to certain conditions subsequent,* which unless he performed there was a limitation over to ·

John H. Hollingsworth, creating what is termed a conditional limitation.

By the terms of the will Maria acquired certain rights and, upon their acquisition, the law would have lent its aid to enforce them, if not against law, policy or morality. She was a beneficiary under the will, and was entitled to the benefits of its provisions, unless they contravened some statute of the State in which the will was made, or were void for some other cause. The testator manifested unequivocally his intention as to the partial or total freedom of Maria, *firstly*, by the wish that she shall enjoy all the privileges of · free persons, consistently with good order and proper subordination, and a devise to her of two hundred and fifty dollars ; and, *secondly*, to be taken to Ohio and, after her expenses of transportation thither were paid out of this money, the remainder of the same to be paid to her there.— Here, certainly, is created a solemn trust—a trust involving the freedom of a slave who, it is fair to suppose, had most favorably commended herself to the greatest kindness of her owner, and he, for the purpose of more effectually carrying out his benign and munificent intentions, devises the greater part of his estate, (which the witnesses tell us was a large one,) *subject to and conditioned upon this trust.*— There is no evidence to show that William H. Hollingsworth actually took the estate so devised to him. Although a devisee is not bound, *nolens volens*, to accept of a devise, yet the law will presume an acceptance, if the devise or gift is of a beneficiary character ; its presumption being based upon that strong, impulsive principle of self-interest which so generally directs and governs the actions of men.— If, therefore, Hollingsworth took the estate, he took it upon the condition of the will and subject to the trust. That portion of it in which it is provided that Maria shall have the privileges of free persons, we believe, in the language of the counsel for the appellant, is void, "because it is a condition inconsistent with the gift. Such a privilege is incompatible with the relation of master and slave, and with the rights, duties and reciprocal obligations resulting therefrom." There are decisions going the other way, but in deciding this case we are governed by what we deem the laws and policy of Carolina. In that State, the slave was not permitted to go as free and exercise all the rights and privileges of free persons of color, and if he did so he became liable to be seized as a derelict and sold. This being the case, the intention of the testator as to this clause could not be

carried out, and the law of Carolina not permitting direct manumission, of course it could not be effected indirectly—the evasion of a statute being an infraction of it.

There is some diversity in the decisions how far a devise of property to a slave will entitle such slave to his freedom by necessary implication.   The case of Hale *v.* Mullin, 5 Harr. & J., 590, and confirmed by the Supreme Court of the United States, 2 Peters, 670, goes to this extent, while the cases found in 2 Call, 319, 4 Dess., 266 and 1 Stewart, 320, assume the negative of this proposition.   A decision of this question is not necessary, however, in this case, further than this—that if the manumission of Maria could have been *legally* effected by the laws of Carolina, the legacy to her of the money would at least have been good, so far as furnishing the means to carry the intent of the testator into execution.   We have spoken of it rather as a fact indicating this intention, and as a fund to enable the party taking under it to effectuate it.

At the time of the probate of the will there seems to have been no law of South Carolina to prevent the carrying off slaves beyond the limits of the State and then to be liberated.   The case of Fraser *v.* Fraser, 2 Hill Ch., 303, 35, sustains us in this view.   The policy of the law against manumission was to prevent an increase of free blacks in the State, and to guard against its deleterious effects.

It is contended that there is no direct gift of freedom after the arrival of Maria in Ohio.   There was certainly a trust, no precise form or set of words being necessary to create one ; and taking the whole clause of the will together in relation to Maria, we think there can be but one construction of it, and that is, that the taking her to Ohio was regarded by the testator as a *dernier* means of giving her freedom.   It is very true that no evidence as to the laws of Ohio was adduced in the Court below; but what rational intendment, other than that of freedom can be made or adduced as to this required removal and the payment of money upon her arrival in that State ?— Beside, the ordinance of 1787 embraced the territory now comprising the State of Ohio, and the decisions of the legal tribunals of that State show that its provisions were embraced in its Constitution.

Having shown that there was a clear intention of giving freedom to Maria and a trust resulting from the nature and very terms of the devise, the next question is whether that trust has been executed.

The will was admitted to probate January 7th, 1828, upwards of

22

eighteen years having elapsed between that time and the period of the commencement of this suit. The defendant in the Court below introduced no evidence to rebut any of the presumptions raised by or under the will, and we know nothing of the time of Maria's arrival in our State, or the circumstances in which she came. All that we know is, she was held in bondage as a slave at the time of action brought. In the absence of all evidence, therefore, to the contrary, we have a legal right to presume that the trust was executed, and perfectly co-incide with the Judge who tried the case in the Court below, as to the principles laid down by him. We think, however, that inasmuch as William H. Hollingsworth was to take the estate by condition *subsequent*—in other words, the estate was obliged to vest in him ere he could perform the conditions—*he*, instead of the executor, was the person called upon to execute the trust. But inasmuch as the ver-dict was in accordance with the justice of the case, and the defend-ant had the full benefit of all the exceptions raised by him to the plaintiff's action in the shape of instructions asked of the Court, we are not disposed to disturb the finding of the jury, who evidently act-ed upon the principles as declared by the Court. The presumption we have spoken of is one of law, arising from the facts of the case. It is an inference drawn as to one fact from the existence of another fact, owing to a connection between them. 2 Starkie on Ev., 680.

In this case the presumption of law that the trust was executed *is*, however, but a *prima facie* inference or intendment, liable to be rebutted by proof to the contrary. In this case, as we have before remarked, no evidence was adduced by the defendant, showing any title what-ever to Maria ; and we think, owing to the presumptions arising in the case, he was called upon to defend his claim by some affirmative evidence, instead of relying entirely upon what he deemed the weak-ness of the cause of his adversary.

In support of the views we have taken on this subject we will cite a few authorities. " The general rule is, that when a person is re-quired to do a certain act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be inferred that he has duly performed it, unless the contrary be shown." 3 East., 192. 10 East., 216. Phil. Ev., 151. Woodward, Justice. Hartwell *v.* Root, 19 John. R., 347. So in the case of the Bank of the United States *v.* Dandridge, 12 Wheat., 64, Judge Story remarks : " By the general rules of evidence presumptions are continually made in cases

of private persons, of acts even of the most solemn nature, when those acts are the result or necessary accompaniment of other circumstances. In aid of this salutary principle, the law itself, for the purpose of strengthening the infirmity of evidence and upholding transactions intimately connected with the public peace and the security of private property, indulges its own presumptions. It presumes that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, *omnia presumuntur rite, et solemnitur esse acta, donec probetur in contrarium.*"

"Fictions of law," says Mr. Justice Blackstone, "although they may startle at first, will be found on consideration to be highly beneficial and useful." They are invited, say the civilians, " *ad conciliandum equitatem, cum ratione et stabilitate juris,*" and it is a well known maxim of the common law, that in " *fictione juris, semper subsistit equitas.*" Best on Pre., 24. It is a general rule that, whenever trustees ought to convey to the beneficial owner, it should be left to the jury to presume that they have so conveyed, whenever such presumption can reasonably be made. 3 Sugden, V. & P., 25, 42, 43, tenth ed. Hill on Trustees, 255. See also Greenleaf, 18, 53. 2 Starkie on Evidence, 680, 681, 2—75. While the law will presume in certain cases that all things are *rite acta*, it never presumes illegality. 12 Eng. Com. Law R., 371.

As to the time within which the condition annexed to the estate devised was to be performed, there being no specific time pointed out for so doing, in such a case the law says that the condition must be performed within a reasonable time. Ross *v.* Tremain, 2 Metcalf, 495. 1 Jarman on Wills, 804. If, therefore, the condition in relation to Maria had not been performed within this reasonable period, the ulterior legatee might have claimed the estate for condition broken, subject, however, to the same condition; for the will uses this language : that if William H. Hollingsworth should refuse to comply with its conditions, then it was the will and desire of the testator " *that all the interests, rights and emoluments which the said William H. Hollingsworth was to have by virtue of the will*, should go to John H. Hollingsworth, and should be his to all intents and purposes, as though *they had been originally devised to him.*" In other words, merely substituting John H. in lieu of William H. Hol-

lingsworth as the devisee of the estate bequeathed, with the conditions annexed to it.

The sustaining of this suit would not have the effect, as contended for by counsel for appellant, of infringing upon the policy of our own State, owing to our statute in relation to the manumission of slaves. If Maria had been proven to have been a slave ever since the death of Oliphant, the testator, and this suit had been primarily brought for the purpose of *establishing* her freedom, then the question involving the policy and statutes of our State would have arisen ; but it cannot arise here, because the presumption is that she was free when she came here ; and if she came after the passage of the law of 1829, she only rendered herself amenable to that act and that of 1832, prohibiting the coming of free persons of color to our State.

The judgment of the Court below is affirmed.

*Per curiam.*